UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

LAURICE WILLIAMS,

                Plaintiff,                      Case No. 1:17-cv-130

v.                                              Honorable Janet T. Neff

WILLIE O. SMITH et al.,

                Defendants.

_____/

**OPINION**

        This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Smith and Christiansen. The Court will serve the complaint against Defendants Maranka, Jansen and Dozeman.

**Discussion**

I.       Factual allegations

Plaintiff Laurice Williams presently is incarcerated at the Ionia Correctional Facility (ICF).  He sues the following ICF officials:  Warden Willie O. Smith; Deputy Warden John Christiansen; Mental Health Unit Chief David Maranka; and Psychologists Meghan Jansen and Kirt Dozeman.

Plaintiff arrived at ICF on June 25, 2015.  On June 26, he was placed on suicide observation after he informed Defendant Jansen that he was contemplating suicide.  He remained on suicide observation status for two months.  During that time, he was evaluated daily by Defendant Jansen or another psychologist.  Also during that time, Plaintiff repeatedly told Jansen and other psychologists that he was depressed, hearing voices, and "couldn't take it anymore." (Compl., ECF No. 1, PageID.8.)  In addition, he repeatedly told them that he was actively searching for a razor, so that he could cut his artery and bleed to death.

At the end of those two months, Defendant Jansen took him off suicide status and sent him to general population.  On September 4, 2015, Plaintiff told the guards that he was hearing voices and felt suicidal.  He was taken to segregation and placed back on suicide observation.  He managed to smuggle a razor with him into segregation.  On September 8, 2015, Plaintiff cut his left arm quite severely, causing substantial bleeding and requiring numerous stitches.  He was evaluated later that day by Defendant Jansen, who told him that she did not believe that he was seriously suicidal but was manipulating staff in order to be returned to the Residential Treatment Program (RTP) at another prison.  Jansen informed Petitioner that she was going to make sure that he stayed at ICF.

On September 13, Petitioner cut himself again, using the same razor he had smuggled in.  Defendant Jansen evaluated him again the next day.  When he told her that he wanted to die and would keep cutting himself until he did, Jansen told him that he was "full of sh-t" and should "stop playing these stupid games."  (*Id.*, PageID.10-11.)

Plaintiff cut himself again on September 20, 2015, using the same razor.  This time, he cut himself so deeply that he had to be rushed to the emergency room, where he received nine stitches.  When Jansen came to see him on September 21, 2015, she said,

> Why do you keep on making my job harder.  The longer you stay on suicide status, the longer I have to keep coming to your cell to evaluate you everyday.  I'm sick and tired of your bullsh-t."

(*Id.*, PageID.11.)  Petitioner told Defendant Jansen that he intended to keep cutting himself until he hit his artery and bled to death.  Defendant Jansen finally asked Plaintiff what he was using to cut himself. Plaintiff showed her the razor blade through the cell door window.  Nevertheless, Jansen did not take the razor blade, and Plaintiff cut himself for the fourth time on September 18 or 19, 2015.  Plaintiff was escorted to health services, where he received more stitches.

After he had been in suicide observation for over one month, on October 6, 2015, Plaintiff cut himself again with the same razor blade.  He yet again received numerous stitches.  Like the other five times, Plaintiff cut his left arm, allegedly in search of his artery.  Finally, after Plaintiff was returned to the segregation unit from health services, he was kept in the day room so that Sergeant Bledsoe could search his cell.  Bledsoe found the razor blade.  Later that day, Defendant Jansen told Plaintiff,

> You're not going back to RTP so you might as well stop cutting yourself.  I already told Maranka that you're just a manipulator, and he said he's never going to submit the paperwork for you to transfer back to RTP.

(*Id.*, PageID).

Plaintiff alleges that he was evaluated by Dr. Esmaeid Emami on September 11, 2015. Dr. Emami recommended that his involuntary treatment order for Plaintiff's schizoaffective and bipolar disorders be continued for another 90 days. Plaintiff has been continuously on an involuntary treatment order since July 1, 2014. If he fails to take his anti-psychotic medication orally, twice per day, he is subjected to injections of the medication. Dr. Emami also recommended individual psychotherapy, group therapy, activity therapy, and milieu therapy, as part of Plaintiff's treatment plan. On September 16, 2015, the Panel Hearing Committee (PHC)[1] heard and reviewed the evidence of the proposed plan of service from Dr. Emami and reauthorized it for 90 days. Shortly after the PHC ordered the services recommended by Dr. Emami, Plaintiff met with Defendants Maranka, Jensen, and Christiansen, and he allegedly did so repeatedly. Plaintiff was repeatedly told that the therapies recommended by Dr. Emami were not provided at ICF, as it is only an outpatient facility. Defendants told him that the therapies were only available at inpatient and RTP facilities and that they did not have to provide them, because they were only recommendations. Plaintiff alleges that he has a long psychiatric history and has been housed at all levels of placement and hospitalized on multiple occasions for serious suicide attempts.

On October 21, 2015, Defendant Dozeman evaluated Plaintiff. Dozeman told Plaintiff that Defendant Maranka sent Dozeman to see if he could talk sense into Plaintiff. Dozeman told Plaintiff that he was the senior psychologist and had a lot of influence. He asked Plaintiff what

---

[1]According to the complaint, "[t]he PHC is made up of three people. A psychiatrist, a psychologist, and a qualified mental health professional (usually a social worker). The PHC hears and reviews evidence presented by the "treating psychiatrist" (Dr. Emami), and then takes a vote at the end of the hearing. The first vote is whether or not they believe that the prisoner is mentally ill. If yes, then they move on to the second vote which is whether or not they believe that the "Proposed Treatment Plan", recommended by the treating psychiatrist, is suitable. If yes, then they officially "ORDER" those services for the prisoner. (ECF No. 1).

he wanted, indicating that, if it was reasonable, he could make it happen.  Plaintiff responded that he needed another razor so that he could kill himself.  Dozeman told Plaintiff, "You don't want to kill yourself, you just want to go back to RTP.  You're not leaving here (ICF) no matter how many times you cut yourself, so you might as well come off of suicide status and stop making everybodies [sic] job harder."  (*Id.*, PageID.16.)  Dozeman then suggested that Plaintiff would be better off in general population, where he could watch television and play basketball.

Plaintiff was released from suicide observation, involuntarily, on October 30, 2015, and he was released from segregation on December 10, 2015.  On February 2, 2016, Plaintiff reported to the guards that he was hearing voices, which were telling him to kill a bunch of officers and then kill himself.  Plaintiff was again escorted to segregation and placed on suicide observation status.  The following day, he was taken off suicide watch and told he would be returned to general population, notwithstanding his claims of experiencing suicidal and homicidal voices.  When Plaintiff refused to go to general population, officers wrote three misconduct tickets for disobeying a direct order.  He was found guilty of all three misconduct charges on February 18, 2017.  Following the guilty findings, Defendant Christiansen classified Plaintiff to administrative segregation, where he continued to be detained until the date he filed his complaint.

Plaintiff alleges that Defendants were deliberately indifferent to his serious mental health needs and the substantial risk that he would harm himself.  He seeks declaratory and injunctive relief, together with compensatory and punitive damages.

II.     Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp.*

-5-

*v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff fails to make specific factual allegations against Defendant Smith, other than to suggest that Smith failed to adequately supervise his subordinates and failed to adequately respond to Plaintiff's kites, grievances and/or verbal complaints.  He also suggests that Defendant Christiansen is responsible with Defendant Smith for having a "policy" of not regulating known denials of adequate medical treatment.

Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability.  *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009).  A claimed constitutional violation must be based upon active unconstitutional behavior.  *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002).  The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act.  *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004).  Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance.  *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).  "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Iqbal*, 556 U.S. at 676.

Notwithstanding his complaints that Defendants Smith and Christiansen actively ignored his complaints of heath-care denials, his allegations suggest only that Defendants did not intervene in response to Plaintiff's complaints.  Such allegations are insufficient to support a conclusion that Defendants engaged in active unconstitutional behavior.  Accordingly, Plaintiff fails

to state a claim against Defendants Smith and Christiansen based on their failures to respond to complaints.

Moreover, to the extent that Plaintiff alleges that Defendant Christiansen violated his constitutional rights by classifying him to administrative segregation, and that Smith and Christiansen continued to violate his rights by keeping him in segregation, he fails to state a claim.

The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano,* 427 U.S. 215, 225 (1976). In *Sandin v. Conner,* 515 U.S. 472, 484 (1995), the Court set forth the standard for determining when a prisoner's loss of liberty implicates a federally cognizable liberty interest protected by the Due Process Clause. According to the *Sandin* Court, a prisoner is entitled to the protections of due process only when a deprivation "will inevitably affect the duration of his sentence" or imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin,* 515 U.S. at 486-87; *see also Jones v. Baker,* 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown,* 62 F.3d 789, 790-91 (6th Cir. 1995).

Confinement in administrative segregation "is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Hewitt v. Helms*, 459 U.S. 460, 467-73 (1983). Thus, it is considered atypical and significant only in "extreme circumstances." *Joseph v. Curtin,* 410 F. App'x 865, 868 (6th Cir. 2010). Generally, courts will consider the nature and duration of a stay in segregation to determine whether it imposes an "atypical and significant hardship." *Harden–Bey v. Rutter*, 524 F.3d 789, 794 (6th. Cir. 2008).

In *Sandin*, the Supreme Court concluded that the segregation at issue in that case (disciplinary segregation for 30 days) did not impose an atypical and significant hardship. *Sandin,*

515 U.S. at 484.  Similarly, the Sixth Circuit has held that mere placement in administrative segregation, and placement for a relatively short period of time, do not require the protections of due process. *Rimmer-Bey,* 62 F.3d at 790-91; *see Joseph v. Curtin,* 410 F. App'x 865, 868 (6th Cir. 2010) (61 days in segregation is not atypical and significant).  The Sixth Circuit has also held, in specific circumstances, that confinement in segregation for a relatively long period of time does not implicate a liberty interest. *See, e.g.*, *Baker,* 155 F.3d at 812-23 (two years of segregation while the inmate was investigated for the murder of a prison guard in a riot); *Mackey v. Dyke,* 111 F.3d 460 (6th Cir. 1997) (one year of segregation following convictions for possession of illegal contraband and assault, including a 117-day delay in reclassification due to prison crowding). *But cf.  Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013) (13 years of segregation implicates a liberty interest); *Harden-Bey,* 524 F.3d at 795 (remanding to the district court to consider whether the plaintiff's allegedly "indefinite" period of segregation, *i.e.*, three years without an explanation from prison officials, implicates a liberty interest); *Harris v. Caruso,* 465 F. App'x 481, 484 (6th Cir. 2012) (eight years of segregation implicates a liberty interest).

Here, the duration of Plaintiff's placement in administrative segregation continued, as of the time he filed his complaint, for less than one year.  Such a period falls short of the time found not to be atypical and significant in *Baker,* 155 F.3d at 812-23, and *Mackey v. Dyke,* 111 F.3d 460.

Moreover, even where a liberty interest is shown, the due process claim "is not complete unless and until the State fails to provide due process." *Zinermon v. Burch,* 494 U.S. 113, 126 (1990).  The Supreme Court has indicated that "[p]rison officials must engage in some sort of periodic review of the confinement of . . . inmates [in segregation]." *Hewitt,* 459 U.S. at 477 n.9.

-9-

"This review will not necessarily require that prison officials permit the submission of any additional evidence or statements." *Id.*  However, the decision to continue confinement must be supported by "some evidence." *Superintendent v. Hill,* 472 U.S. 445, 454 (1985).  "This requirement balances the procedural rights of prisoner against the need of prison officials to have freedom to operate their facilities on a day-to-day basis."  *Harris,* 465 F. App'x at 484.   In short, where an inmate's confinement in segregation implicates a liberty interest, he is entitled to a "periodic review of his confinement, supported by some evidence or indicia of reliability." *Id.* at 485; *see also Selby*, 734 F.3d at 559-60 (holding that the mere formality of holding reviews is not sufficient; whether a given process is meaningful and adequate is a question of fact).

Here, Plaintiff does not even allege that he has not received periodic review of his administrative segregation.  He therefore has alleged no facts suggesting that he did not receive all of the process to which he was entitled.

Plaintiff also suggests that the conditions and restrictions imposed upon him as a segregated prisoner have caused him mental distress in violation of his Eighth Amendment rights. The Eighth Amendment prohibits punishments that are not only physically barbaric, but also those which are incompatible with "the evolving standards of decency that mark the progress of a maturing society," or which "involve the unnecessary and wanton infliction of pain."  *Estelle v. Gamble*, 429 U.S. 97, 102-103 (1976).  To establish an Eighth Amendment claim, the prisoner must show that he was deprived of the "minimal civilized measure of life's necessities."  *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).  Restrictions that are restrictive or even harsh, but are not cruel and unusual under contemporary standards, are not unconstitutional.  *Id.*  Thus, federal courts may not intervene to remedy conditions that are merely unpleasant or undesirable.

Placement in segregation is a routine discomfort that is "'part of the penalty that criminal offenders pay for their offenses against society.'"  *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. 337, 347 (1981); *see also Jones v. Waller*, No. 98-5739, 1999 WL 313893, at *2 (6th Cir. May 4, 1999).  Although it is clear that Plaintiff was denied certain privileges as a result of his administrative segregation, he does not allege or show that he was denied basic human needs and requirements.  The Sixth Circuit has held that without a showing that basic human needs were not met, the denial of privileges as a result of administrative segregation cannot establish an Eighth Amendment violation.  *See Evans v. Vinson*, 427 F. App'x 437, 443 (6th Cir. 2011); *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008).  Moreover, Plaintiff cannot bring an Eighth Amendment claim for emotional or mental damages because he does not allege a physical injury. *See* 42 U. S.C. §1997e(e); *see also Hudson*, 503 U.S. at 5; *Harden-Bey*, 524 F.3d at 795.  As a result, Plaintiff fails to state an Eighth Amendment claim against Defendants Smith and Christiansen.

For these reasons, the Plaintiff fails to state a claim against Defendants Smith and Christiansen.  Upon review, the Court concludes that Plaintiff's remaining allegations against Defendants Maranka, Jansen and Dozeman are sufficient to warrant service of the complaint.

### Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Smith and Christiansen will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  The Court will serve the complaint against Defendants Maranka, Jansen and Dozeman.

An Order consistent with this Opinion will be entered.


Dated:  March 10, 2017               /s/ Janet T. Neff
                                     Janet T. Neff
                                     United States District Judge